**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
WESTERN DIVISION**

| | | |
|---|---|---|
| **JAMIE W. DRAPER,** | | |
| Plaintiff, | | **No. 13-CV-4056-DEO** |
| v. | | |
| **CAROLYN W. COLVIN,**<br>Commissioner of Social<br>Security, | | **ORDER** |
| Defendant. | | |

———————————

This matter is before the Court pursuant to Jamie Draper's [hereinafter Mr. Draper] application for disability insurance benefits under Title II of the Social Security Act ("Act"), 42 U.S.C. §§ 401 et seq. After considering the parties' arguments, the Court took the matter under advisement and now enters the following.

## I. FACTUAL BACKGROUND

Mr. Draper, 35 years old at the time of the ALJ hearing, alleges disability arising out injuries he suffered during a motor vehicle accident. Mr. Draper was rear-ended while driving down the interstate in a blizzard, and he suffered various injuries to his neck and head. Since the accident, Mr. Draper lives with his mother.

Mr. Draper has a high school degree. After graduating from high school, Mr. Draper had a number of manual labor type jobs; including, as a commercial glass installer, a painter, and general construction work. His final job prior to his alleged onset date was working retail at the construction supply store, Home Depot. He was gainfully employed at all times prior to the accident.

## II. PROCEDURAL HISTORY

Mr. Draper protectively filed an application for disability insurance benefits under Title II of the Social Security Act ("Act"), 42 U.S.C. §§ 401 et seq. (Tr. 72, 74, 163-69) on August 24, 2010. His claim was denied initially and upon reconsideration. Mr. Draper appealed, and a hearing was held before an ALJ. On May 21, 2012, the ALJ denied Mr. Draper's claim. Mr. Draper appealed to the Appeals Council, who denied his claim on April 23, 2013. Mr. Draper filed the present Complaint on June 21, 2013. Docket No. 1.

The ALJ set out the issue presently before the Court:

> [t]he issue is whether the claimant is disabled under sections 216(i) and 223(d) of the Social Security Act. Disability is defined as the inability to engage in any substantial gainful activity by reason of any medically determinable physical or

> mental impairment or combination of
> impairments that can be expected to result
> in death or that has lasted or can be
> expected to last for a continuous period of
> not less than 12 months. There is an
> additional issue whether the insured status
> requirements of sections 216(i) and 223 of
> the Social Security Act are met. The
> claimant's earnings record shows that the
> claimant has acquired sufficient quarters
> of coverage to remain insured through
> December 31, 2014. Thus, the claimant must
> establish disability on or before that date
> in order to be entitled to a period of
> disability and disability insurance
> benefits.

Docket No. 7, Tr. 9.

Under the authority of the Social Security Act, the Social Security Administration has established a five-step sequential evaluation process for determining whether an individual is disabled and entitled to benefits. 20 C.F.R. § 404.1520. The five successive steps are: (1) determination of whether a plaintiff is engaged in "substantial gainful activity," (2) determination of whether a plaintiff has a "severe medically determinable physical or medical impairment" that lasts for at least 12 months, (3) determination of whether a plaintiff's impairment or combination of impairments meets or medically equals the criteria of a listed impairment, (4) determination of whether a plaintiff's Residual Functional

Capacity (RFC) indicates an incapacity to perform the requirements of their past relevant work, and (5) determination of whether, given a Plaintiff's RFC, age, education and work experience, a plaintiff can "make an adjustment to other work." 20 C.F.R. § 404.1520(4)(i-v).

At step one, if a plaintiff is engaged in "substantial gainful activity" within the claimed period of disability, there is no disability during that time. 20 C.F.R. § 404.1520(a)(4)(i). At step 2, if a plaintiff does not have a "severe medically determinable physical or mental impairment" that lasts at least 12 months, there is no disability. 20 C.F.R. § 404.1520(a)(4)(ii). At step 3, if a plaintiff's impairments meet or medically equal the criteria of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, and last at least 12 months, a plaintiff is deemed disabled. 20 C.F.R. § 404.1520(e). Before proceeding to step 4 and 5, the ALJ must determine a plaintiff's Residual Functional Capacity [RFC]. RFC is the "most" a person "can still do" despite their limitations. 20 C.F.R. § 404.1545(a)(1). The RFC an ALJ assigns a plaintiff has been referred to as the "most important issue in a disability case

. . . ." <u>Malloy v. Astrue</u>, 604 F. Supp. 2d 1247, 1250 (S.D. Iowa 2009) (citing <u>McCoy v. Schweiker</u>, 683 F.2d 1138, 1147 (8th Cir. 1982)(en banc) *abrogated on other grounds* by <u>Higgins v. Apfel</u>, 222 F.3d 504, 505 (8th Cir. 2000)). When determining the RFC, the ALJ must consider all of the relevant evidence and all of the Plaintiff's impairments, even those which are not deemed severe, as well as limitations which result from symptoms, such as pain. 20 C.F.R. § 404.1545(a)(2) and (3). An ALJ "may not simply draw his own inferences about a plaintiff's functional ability from medical reports." <u>Strongson v. Barnhart</u>, 361 F.3d 1066, 1070 (8th Cir. 2004).

At step 4, if, given a plaintiff's RFC, a plaintiff can still perform their past relevant work, there is no disability. 20 C.F.R. § 404.1520(a)(4)(iv). At step 5, if, given a plaintiff's RFC, age, education, and work experience, a plaintiff can make an adjustment to other work, there is no disability. 20 C.F.R. §§ 404.1520(a)(4)(v) and 416.920(a)(4)(v). This step requires the ALJ to provide "evidence" that a plaintiff could perform "other work [that] exists in significant numbers in the national economy." 20

C.F.R. § 404.1560(c)(2). In other words, at step 5, the
burden of proof shifts from a plaintiff to the Commissioner of
the S.S.A. Basinger v. Heckler, 725 F.2d 1166, 1168 (8th Cir.
1984). The ALJ generally calls a Vocational Expert (VE) to
aid in determining whether this burden can be met.

In this case, the ALJ applied the appropriate methodology
and found that Mr. Draper had not engaged in substantial
gainful employment since January 1, 2010. The ALJ stated that
Mr. Draper has severe impairments including status post
cervical and lumbar spine fusion surgeries, affective
disorder, and anxiety disorder. However, the ALJ found that
Mr. Draper did not suffer from a disability as contemplated by
the Social Security Code. Specifically, the ALJ stated:

> [t]he claimant does not have an impairment
> or combination of impairments that meets or
> medically equals the severity of one of the
> listed impairments in 20 CFR Part 404,
> Subpart P, Appendix 1 (20 CFR 404.1520(d),
> 404.1525 and 404.1526). Although the
> claimant has impairments considered severe,
> the undersigned finds these impairments
> were not attended, singly or in combination
> with any other impairment, with the
> specific clinical signs and diagnostic
> findings required to meet or equal the
> requirements of any listed impairment.
> Moreover, no physician has opined that the
> claimant equals a listed impairment alone
> or in combination.

Docket No. 7, Tr. 12.

The ALJ went on to consider residual functional capacity and concluded:

> [t]he claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526). The undersigned has considered all of the claimant's impairments, singly and in combination, and finds that they do not meet or medically equal any of the listings found in 20 CFR Part 404, Subpart P, Appendix 1.

Docket No. 7 Tr. 12.

The ALJ considered Mr. Draper's neck/back problems and stated:

> [t]he undersigned has evaluated the claimant's back and neck conditions under the section 1.00 listings for musculoskeletal impairments, but concludes that none of the listings are met. The record does not document medical findings that are equivalent in severity and duration to any of the listed findings, and the claimant's impairments therefore do not medically equal a listing under this section. The undersigned gave particular consideration to listing 1.04 in evaluating the claimant's back and neck disorders. The "paragraph A" criteria of listing 1.04 are not met because the record does not demonstrate evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion

7

of the spine, motor loss (atrophy with
associated muscle weakness) accompanied by
sensory or reflex loss, and positive
straight-leg raising. "Paragraph B" and
"paragraph C" criteria are not met because
the record does not establish the presence
of spinal arachnoiditis or lumbar spinal
stenosis resulting in pseudoclaudication
and an inability to ambulate effectively.

Docket No. 7, Tr. 12. The ALJ also considered Mr. Draper's

mental impairments and stated:

[t]he severity of the claimant's mental
impairments, considered singly and in
combination, do not meet or medically equal
the criteria of listings 12.04 and 12.06.
In making this finding, the undersigned has
considered whether the "paragraph B"
criteria are satisfied... The undersigned
finds, consistent with the medical evidence
discussed below, that the "B" criteria of
the section 12.00 listings are not
satisfied in that the claimant's mental
impairments resulted in no more than mild
restriction of activities of daily living,
mild difficulties maintaining social
functioning, moderate difficulties in
maintaining concentration, persistence or
pace, and no episodes of decompensation.
Because the claimant's mental impairments
do not cause at least two "marked"
limitations or one "marked" limitation and
"repeated" episodes of decompensation, each
of extended duration, the "paragraph B"
criteria are not satisfied.

Docket No. 7, Tr. 12-13. The ALJ also found that Mr. Draper

did not meet the paragraph C criteria regarding mental

impairments. Id.

8

Based on those conclusions, the ALJ found that Mr. Draper:

> has the residual functional capacity (RFC) to perform light work as defined in 20 CFR 404.1567(b) with the following limitations: the claimant is able to sit, stand and/or walk for 6 hours each in an 8-hour workday; he would require the opportunity to alternate positions every 15 minutes, remaining on the job and in the next fixed position for up to 15 minutes, and alternating between these positions throughout the workday with the totals remaining sitting up to 6 hours and standing/walking up to 6 hours; the claimant can never climb ladders, ropes or scaffolds; he can never crawl; he can occasionally climb stairs or ramps; he can occasionally balance, crouch, stoop and kneel; he is limited to occasional overhead reaching bilaterally; he should avoid concentrated exposure to extreme cold, vibrations, and/or work around hazards such as dangerous machinery and unprotected heights; the claimant is limited to understanding, remembering, and carrying out short, simple instructions.

Docket No. 7, Tr. 13.

The ALJ than considered the plaintiff's testimony under the Polaski standard and stated:

> [a]fter careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the

9

> intensity, persistence and limiting effects
> of these symptoms are not credible to the
> extent they are inconsistent with the above
> residual functional capacity assessment.

Docket No. 7, Tr. 15.

The ALJ considered the medical evidence of Dr. Stephen Veit, Mr. Draper's primary physician, and gave it some weight. However, the ALJ discounted Dr. Veit's note that Mr. Draper needs to change positions every 15 minutes. The ALJ also gave some weight to agency reviews conducted by Dr. Chrystalla Daly and Dr. John May and their findings regarding Mr. Draper's limitations. Regarding Mr. Draper's mental impairments, the ALJ gave great weight to the opinions of Dr. William Morton and Dr. Scott Shaffer and concluded that Mr. Draper had few mental restrictions and had the functional capacity to perform simple, routine tasks. Finally, the ALJ gave little weight to the testimony and evidence from Mr. Draper's friend, Gwen Spooner, and to Mr. Draper's mother, finding that their testimony was inconsistent with the medical evidence.

The ALJ went on to find that:

> Claimant has a steady work history and this
> is a factor in his favor. Claimant has
> consistently complained of pain, and the
> record reflects severe residuals from the
> motor vehicle accident. However, his

complaints of headaches, dizziness and insomnia of the nature and frequency alleged are not supported by the medical records to the extent they would interfere with work. Further, claimant asserts a need to lie down during the day and while he may indeed do so, the medical necessity of this has not been established. Considering the claimant's activities of daily living and previous work activity, the treatment records, the physical RFC assessment findings at Exhibits 11F and 16F, the limitations suggested by the claimant's treating doctors, the consultative psychological examination at Exhibit 12F, the mental assessment findings at Exhibits 13F, 14F, and 15F, the testimony of Ms. Spooner, the statements from the claimant's mother, and the claimant's subjective allegations and hearing testimony, the undersigned finds that the claimant's limitations are not fully disabling, and that the claimant retains the capacity to perform work activities with the limitations set forth above.

Docket No. 7, Tr. 19.

Based on that, the ALJ found that Mr. Draper could not return to his past relevant work. However, the ALJ found that:

[c]onsidering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569 and 404.1569(a))... The vocational expert

testified that given all of these factors the individual would be able to perform the requirements of representative occupations such as deburrer (D.O.T. #676.686-014) with 143,140 jobs in the United States, hand packager (D.O.T. #559.687-074) with 472,900 jobs in the United States, and assembler (D.O.T. #701.687-010) with 288,000 jobs in the United States. The vocational expert noted that the number of available jobs in each of these occupations would be reduced by approximately 75 percent given the requirement that the claimant be allowed to alternate positions every 15 minutes. Pursuant to SSR 00-4p, the undersigned has determined that the vocational expert's testimony is consistent with the information contained in the Dictionary of Occupational Titles, with the exception that the vocational expert's testimony regarding the alternation of positions throughout the workday was based on his experience in the field. Based on the testimony of the vocational expert, the undersigned concludes that, considering the claimant's age, education, work experience, and residual functional capacity, the claimant is capable of making a successful adjustment to other work that exists in significant numbers in the national economy. A finding of "not disabled" is therefore appropriate under the framework of the above-cited rule.[1]

Docket No. 7, Tr. 20.

---

[1] A deburrer generally runs a type of industrial sanding machine.

## III.  STANDARD OF REVIEW

This Court's role in review of the ALJ's decision requires a determination of whether the decision of the ALJ is supported by substantial evidence on the record as a whole. See 42 U.S.C. § 405(g); Finch v. Astrue, 547 F.3d 933, 935 (8th Cir. 2008).  Substantial evidence is less than a preponderance but enough that a reasonable mind might find it adequate to support the conclusion in question.  Juszczyk v. Astrue, 542 F.3d 626, 631 (8th Cir. 2008) (citing Kirby v. Astrue, 500 F.3d 705, 707 (8th Cir. 2007)).  This Court must consider both evidence that supports and detracts from the ALJ's decision.  Karlix v. Barnhart, 457 F.3d 742, 746 (8th Cir. 2006) (citing Johnson v. Chater, 87 F.3d 1015, 1017 (8th Cir. 1996)).  In applying this standard, this Court will not reverse the ALJ, even if it would have reached a contrary decision, as long as substantial evidence on the record as a whole supports the ALJ's decision.  Eichelberger v. Barnhart, 390 F.3d 584, 589 (8th Cir. 2004).  The ALJ's decision shall be reversed only if it is outside the reasonable "zone of choice."  Hacker v. Barnhart, 459 F.3d 934, 936 (8th Cir. 2006) (citing Culbertson v. Shalala, 30 F.3d 934, 939 (8th Cir. 1994)).

This Court may also ascertain whether the ALJ's decision is based on legal error. Lauer v. Apfel, 245 F.3d 700, 702 (8th Cir. 2001). If the ALJ applies an improper legal standard, it is within this Court's discretion to reverse his/her decision. Neal ex rel. v. Barnhart, 405 F.3d 685, 688 (8th Cir. 2005); 42 U.S.C. 405(g).

## IV. ISSUES

In his brief, Mr. Draper argues two primary issues. First, Mr. Draper argues that the ALJ failed to credit Mr. Draper's subjective complaints and that the ALJ erred in determining Mr. Draper's RFC. Second, Mr. Draper argues that the ALJ failed to give proper weight to the opinion of the treating physician and, instead relied on the opinion of non-treating consultants.

## V. ANALYSIS

In order for a plaintiff to qualify for disability benefits, they must demonstrate they have a disability as defined in the Social Security Act [hereinafter the Act]. The Act defines a disability as an:

> inability to engage in any substantial
> gainful activity by reason of any medically
> determinable physical or mental impairment

which can be expected to result in death or
which has lasted or can be expected to last
for a continuous period of not less than 12
months . . . .

42 U.S.C. § 423(d)(1)(A).

## A. Credibility

The first argument the Court will address is about the
Plaintiff's credibility and the ALJ's credibility
determination. Mr. Draper argues that the ALJ erred by giving
little weight to his subjective medical complaints. The
standard regarding credibility findings is well settled. "In
order to assess a claimant's subjective complaints, the ALJ
must make a credibility determination by considering the
claimant's daily activities; duration, frequency, and
intensity of the pain; precipitating and aggravating factors;
dosage, effectiveness and side effects of medication; and
functional restrictions." Mouser v. Astrue, 545 F.3d 634, 638
(8th Cir. 2008) citing Polaski v. Heckler, 739 F.2d 1320, 1322
(8th Cir. 1984). The ALJ may not discount subjective
complaints solely because they are not supported by objective
medical evidence. An ALJ must have sufficient justification
for doubting a claimant's credibility. See Wildman v. Astrue,
596 F.3d 959, 968 (8th Cir. 2010) (quoting Schultz v. Astrue,

479 F.3d 979, 983 (8th Cir. 2007)). However, "[a] disability claimant's subjective complaints of pain may be discounted if inconsistencies in the record as a whole bring those complaints into question." <u>Gonzales v. Barnhart</u>, 465 F.3d 890, 895 (8th Cir. 2006).

As stated above, the ALJ may only discount the plaintiff's complaints if they are inconsistent with the record as a whole. Mr. Draper testified that he cannot sit for long periods of time. Docket No. 7, Tr. 32, 37. He also stated that he cannot be on his feet for any duration of time. <u>Id.</u> at p. 36. He testified that he constantly needs to reposition himself or he suffers from extreme pain. Docket No. 7, Tr. 32, 36. Mr. Draper testified that he cannot spend a long period in the car and that a two hour road trip would lay him up for days. Docket No. 7. Tr. 33. He cannot grip things tightly with his right hand and he cannot lift more than 10-15 pounds. Docket No. 7, p. 36. Mr. Draper also testified that he has delusions as a result of his medication. Docket No. 7, Tr. 34. He is depressed as a result of diminished physical ability and suffers panic attacks. Docket No. 7, Tr. 38.

The Defendant argues that:

> the ALJ properly performed a credibility
> analysis and considered the medical and
> other evidence of record (Tr. 13-19)...
> The ALJ carefully considered the objective
> medical evidence, and found that it
> undercut some of plaintiff's allegations
> (Tr. 13-19)... [T]he ALJ properly found
> the treatment records showed objective
> clinical findings supporting limitations
> less severe than those alleged by plaintiff
> (Tr. 13-19).   Contrary to plaintiff's
> suggestion, see Pl.'s Br. at 19-20, the ALJ
> acknowledged plaintiff's significant back
> and neck impairments and that plaintiff
> experienced pain therefrom, but properly
> found the records did not support the full
> extent of the alleged limitations, such as
> the need to lie down (Tr. 13-19).  The ALJ
> in fact explicitly stated plaintiff
> experienced "severe residuals" from the
> accident (Tr. 19).  Although an ALJ may not
> reject a claimant's subjective complaints
> solely for lack of objective medical
> evidence, the ALJ may consider the absence
> of objective medical evidence supporting
> the degree of severity alleged as one of
> several factors in the credibility
> analysis.  See 20 C.F.R. § 404.1529...  The
> ALJ acknowledged the severe limitations
> stemming from plaintiff's accident, yet
> appropriately found, in light of the entire
> record, that plaintiff retained the RFC for
> a reduced range of light work (Tr. 13-19).

Docket No. 12, p. 7-9, 10-11, 12.

At the outset, the Court notes that the Plaintiff's earnings history entitles him to substantial credibility when

claiming disability.  See <u>Nunn v. Heckler</u>, 732 F.2d 645, 648 (8th Cir. 1984); <u>Jimmerson v. Astrue</u>, 717 F. Supp. 2d 840, 862 (S.D. Iowa 2010).  Mr. Draper does not fit the profile of a man who is out to claim benefits for which he is not entitled. See <u>Mussman v. Apfel</u>, 17 F. Supp. 2d 885, 891 (S.D. Iowa 1998); (a claimant with a good work record is entitled to substantial credibility when claiming an inability to work because of a disability).  Mr. Draper has a good work history. He was injured in an automobile accident; and it is undisputed that his injury (which required surgery and nearly a month in the hospital) is real, even if both the Defendant and the ALJ now claim he is exaggerating his pain.  Based on his work history, Mr. Draper is entitled to some deference in the ALJ's credibility determination.

Moreover, as argued in the Plaintiff's brief:

> The ALJ observed Mr. Draper consistently complained of pain, a factor supporting the claimant's testimony.  The ALJ then asserted some of Mr. Draper's complaints "of headaches, dizziness and insomnia [were] not supported by the medical records." (TR 19)  The ALJ failed to make any such finding regarding Mr. Draper's neck and back pain.  The second reason given was that the medical evidence allegedly did not support the need to lie down during the day. (TR 19)  As Dr. Veit

explained, as the claimant's lower back tried to compensate for the lack of motion in his neck, Mr. Draper experienced greater back pain. (TR 544) The ALJ believed Mr. Draper's daily activities were not consistent with his disability claim. (TR 19) There is no requirement that an applicant be "completely bedridden" or "unable to perform many household chores to be considered disabled. <u>Ludden v. Bowen</u>, 888 F.2d 1246, 1248 (8th Cir. 19[89]), quoting <u>Easter v. Bowen</u>, 867 F.2d 1128 (8th Cir. 1989)... [Additionally, the] ALJ failed to acknowledge the claimant's medications... Mr. Draper was taking powerful medications consistent with his disability claim. The ALJ failed to fully address this factor.

Docket No. 21, p. 19-21.

The Court agrees that the medical evidence supports Mr. Draper's claim. As stated above, Mr. Draper had a substantial work history. As will be discussed more below, Dr. Viet, the treating physician, found that Mr. Draper had significant restrictions. Dr. Veit's restrictions support Mr. Draper's testimony, which is also supported by the testimony of Mr. Draper's mother and his friend, Ms. Spooner. Based on that analysis, substantial evidence does not support the ALJ's decision to give little weight to Mr. Draper's subjective allegations/testimony regarding his disability. In fact, Mr. Draper's statements regarding his disability are substantially

supported by the record in this case. Because Mr. Draper testified credibly about his pain, and that testimony was supported by the medical evidence, the limitations outlined by Mr. Draper should have been incorporated into the question posed to the vocational expert.

**B.  Medical Evidence**

Mr. Draper argues that the ALJ improperly discounted the opinion of the treating physician, Dr. Veit, and instead relied on consulting medical experts. As has been repeatedly stated:

> [t]he opinion of a treating physician should not ordinarily be disregarded and is entitled to substantial weight. A treating physician's opinion regarding an applicant's impairment will be granted controlling weight, provided the opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the record.

Singh v. Apfel, 222 F.3d 448, 452 (8th Cir. 2000); see also 20 C.F.R. §404.1527(c)(2) and Reed v. Barnhart, 399 F.3d 917, 920 (8th Cir. 2005). Even if not entitled to controlling weight, in many cases, a treating source's medical opinion will be entitled to the greatest weight and should be adopted. SSR 96-5p; see Reed v. Barnhart, 399 F.3d at 920; 20 C.F.R.

§404.1527(c)(2). The ALJ must "always give good reasons . . . for the weight [he gives the] treating source's opinion." 20 C.F.R. §404.1527(c)(2); see <u>Singh</u>, 222 F.3d at 452. In the decision's narrative discussion section, the ALJ "must . . . explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved." SSR 96-8p. Additionally, the opinions of an examining physician should be given greater weight that the opinions of a source who had not examined the claimant. See <u>Shontos v. Barnhart</u>, 328 F.3d 418, 425 (8th Cir. 2003), citing 20 C.F.R. § 404.1527(d)(1) (now 20 C.F.R. §404.1527(c)).

There is no dispute that Dr. Veit was and is Mr. Draper's treating physician. As Mr. Draper argues in his brief:

> [a]fter five surgeries and almost twenty office visits, Dr. Veit conducted the final examination included in the administrative record. From this examination, on April 4, 2012, Dr. Veit concluded that Mr. Draper, "must have permanent job restriction of changing (sic) what he is doing and changing from sitting to standing to lying down every 10-15 minutes at the most. No power lifting with his upper extremities. No repetitive neck action or even very much neck action. No stooping, squatting, climbing, or crawling." (TR 544) As his lower back tried to compensate for the lack of motion in his neck, Mr. Draper experienced greater back pain. Dr. Veit

> continued to note that Mr. Draper is only
> able to sleep for short periods of time.
> In addition to back exercises,
> repositioning, and frequently lying down,
> Dr. Veit continued his narcotic pain
> prescriptions. (TR 544).

Docket No. 11, p. 12-13. Because the ALJ selectively discounted Dr. Veit's final opinion, his RFC differs from the evidence contained in the treating physician's medical record. Specifically:

> the ALJ found Mr. Draper needed to
> alternate between sitting and standing; Dr.
> Veit noted the need to alternate from
> sitting to standing to laying down. In
> addition, the ALJ found the claimant must
> alternate positions every 15 minutes while
> Dr. Veit found the claimant needed to
> change position every 10-15 minutes. In
> addition, Dr. Veit found Mr. Draper needed
> to avoid repetitive neck action or
> extensive neck movement, while the ALJ
> included no such limitation. The
> vocational expert testified that if the
> claimant needed to lay down three times a
> week, he could not perform competitive
> employment. (TR 69) The differences
> between the ALJ's findings and Dr. Veit's
> opinions, then, are material.

Docket No. 11, p. 13-14. The Court is persuaded that Dr. Veit's opinions were supported by the medical evidence, including Mr. Draper's detailed post-accident medical history. The ALJ's decision to discount Dr. Veit's final conclusion is

not supported by substantial evidence. Additionally, the Court agrees with the Plaintiff that the ALJ's decision to rely on the opinion of Dr. Gust, who only saw Mr. Draper around the time of his initial surgery, is not supported by substantial evidence. Dr. Veit, who saw Mr. Draper throughout the post-accident period, presents a much more current picture of Mr. Draper's medical condition.

## C. Hypothetical

During the ALJ hearing, the ALJ questioned vocational expert Janavee Ogrun. The vocational expert testified that Mr. Draper would be unable to return to his past relevant work. Docket No. 7, Tr. 66. The ALJ then set out a hypothetical where an individual has the residual functional capacity to lift up to 10 pounds frequently and 20 pounds occasionally, to sit and stand/or walk about six hours each in an eight hour day with normal breaks; the individual is limited to never climbing or crawling and can only occasionally climb, stoop, kneel or crouch; the individual is also limited to occasionally reaching overhead; the individual is limited in their ability to work with machines or in the elements; and the individual can only handle simple and short

instructions. The vocational expert testified that under those circumstances, the individual would be able to find jobs, including as a hand packager and as an assembler. Docket No. 7, Tr. 67. However, when Mr. Draper's attorney changed the hypothetical and asked about a situation where the individual may have to lay down on the job and also avoid stooping, the vocational expert testified that the individual would be unable to find work. Docket No. 7, Tr. 69.

As has been repeatedly stated, "[a] vocational expert's testimony constitutes substantial evidence when it is based on a hypothetical that accounts for all of the claimant's proven impairments." Buckner v. Astrue, 646 F.3d 549, 560–61 (8th Cir. 2011). "[T]he hypothetical need not frame the claimant's impairments in the specific diagnostic terms used in medical reports, but instead should capture the concrete consequences of those impairments." Id. (quoting Hulsey v. Astrue, 622 F.3d 917, 922 (8th Cir. 2010)).

Based on the forgoing analysis regarding credibility and medical evidence, the Court is persuaded that the ALJ failed to properly articulate Mr. Draper's limitations in the first hypothetical question to the vocational expert. Instead, the

hypothetical questions posed by Mr. Draper's attorney accurately stated Mr. Draper's limitations. In response to those questions, the vocational expert stated that no jobs exist that Mr. Draper could perform.

## VI.  CONCLUSION

It is clear the ALJ erred in the credibility, medical evidence and RFC sections discussed above. The question thus becomes whether this Court should remand for further consideration or solely for the purpose of awarding benefits.

This Court has the authority to reverse a decision of the Commissioner, "with or without remanding the cause for rehearing," but the Eighth Circuit has held that a remand for an award of benefits is appropriate only where "the record 'overwhelmingly supports'" a finding of disability. 42 U.S.C. 405(g); Buckner v. Apfel, 213 F.3d 1006, 1011 (8th Cir. 2000) (citing Thompson v. Sullivan, 957 F.2d 611, 614 (8th Cir. 1992)).

The Court has considered the entire record, the parties' briefs, and the arguments presented at hearing. When the medical evidence is considered along with the Plaintiff's credible testimony, this Court is persuaded that the overwhelming evidence supports a finding of disability.

**Therefore, the decision of the ALJ is reversed and remanded solely for the calculation of benefits from Plaintiff's claimed onset of disability.**

Application for attorney fees pursuant to the Equal Access to Justice Act, 28 U.S.C. § 2412 (EAJA), must be filed within thirty (30) days of the entry of final judgment in this action. Thus, unless this decision is appealed, if plaintiff's attorney wishes to apply for EAJA fees, it must be done within thirty (30) days of the entry of the final judgment in this case.

**IT IS SO ORDERED** this 18th day of September, 2014.

_____
Donald E. O'Brien, Senior Judge
United States District Court
Northern District of Iowa